CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY

v. HARRIS.

5-592                    276 S. W. 2d 686

Opinion delivered March 28, 1955.

*Wright, Harrison, Lindsey & Upton*, for appellant.

*Odell Pollard*, for appellee.

GRIFFIN SMITH, Chief Justice. Appellee as plaintiff below sued Rock Island for $1,250 to compensate damages claimed to have been sustained when fire spread to his grass land adjoining the defendant's right-of-way. In the complaint it is alleged that the fire was "believed to have escaped" from the company's property. In testifying Harris said: "I don't know anything about the fire. I don't have any idea how it got started—not the least idea. I would not undertake to say how it happened [for] I do not know."

The jury returned a verdict for $950 upon which judgment was rendered. The court allowed $200 as an attorney's fee.

Although objections are made to instructions given at the plaintiff's request, the court's declarations respecting applicable laws will not be discussed. This becomes unnecessary because the verdict was based upon speculation and conjecture, and on that account must be set aside.

From Griffithville a Rock Island branch line runs northwesterly to Higginson (where it intersects the Missouri Pacific), thence to Searcy. Harris owns 120 acres traversed by the railroad, beginning at a point approximately a mile from Griffithville. If a person standing on the right-of-way faced northwesterly and looked toward Searcy, about 25 acres of Harris' land would be to the left and the remainder to the right. The distance from Griffithville to Higginson is five miles; from Higginson to Searcy it is much less.

The fire occurred on Monday, August 3d, 1953, and was discovered by Harris shortly before noon. The smell of burning creosote attracted his attention. When plaintiff reached the point of action the fire was "strictly on the right-of-way—up and down the railroad track. . . .

It came from the southwest and was [then] on the west side of the track—up and down the railroad quite a distance.''

G. W. Radford, a Harris tenant, left his home early the morning of August 3d to get wood at a sawmill. In returning he met the railroad company's section gang going to work. Undisputed evidence is that the workmen did not pass the point where the fire originated until 7:45 a. m. They were on a small car proceeding from Griffithville northwesterly. Radford went to his own home for a short stay, then to Griffithville for two or three hours. Looking toward Searcy from Griffithville Radford observed smoke. Apprehending that it came from a fire near the railroad, and observing that a brisk breeze had begun to blow, he went up the track through fear that the fire might spread to his own home.

At that time a narrow strip on each side of the rails had been burned, extending two hundred and fifty or three hundred yards. Other evidence, not in dispute, disclosed that on June 25th the railroad company had sprayed the right-of-way with a chemical weed-killer, defoliating a strip on each side of the rails. Through use of a persimmon branch or limb Radford put out the fire—or thought he had. Feeling confident that his work had been a success, Radford went home and had lunch. While he was eating Mrs. Radford remarked, '' I thought you had the fire put out.'' The witness then returned and found appellee on the scene. A crippled leg prevented Harris from crossing a fence to effectively fight the spreading blaze.

Radford identified a trestle near which the fire was burning and spoke of it as being a quarter of a mile or more from the Harris lands. On cross-examination Radford estimated that it was 8:30 when he went from his home to Griffithville. He did not see any signs of fire at that time, but did observe the smoke sometime between eleven o'clock and noon. In response to a direct question he said: ''I sure don't know how the fire started, and have wondered a thousand times.''

James L. Harris had been employed by Rock Island for the past twelve years. He was a member of the section crew that worked the day of the fire. Appellee is his brother. The three-man team passed F. G. Harris' farm between 7:30 and 7:45 the morning in question. The witness knew of two occasions that day when railroad employes passed over the right-of-way near appellee's land. An extra gang was employed, but the witness did not know where the work was being done. He knew nothing of the fire until 4:30 that afternoon. The work this witness was engaged in was near Higginson. In referring to other employes "who passed over the right-of-way that day" he had in mind the round trip his own crew made, but "there could have been some [who did not come as far as I was]."

Earl MacAlexander, who was in charge of the section crew, and who resides at Griffithville, testified that J. L. Harris and J. A. West were working with him August 3d, but at the time of the fire Harris was engaged with welders at the Missouri Pacific crossing. Maintenance Gang No. 1, [including colored men] was operating between Higginson and Searcy, "putting in ties about a mile from the college."

There was testimony that no highway traverses the immediate territory where the fire occurred and that the public makes frequent use of the right-of-way as a matter of convenience.

Diesel-drawn trains operate over the area between Des Arc and Searcy three times a week: Tuesdays, Thursdays, and Saturdays. They use oil as fuel in combustion chambers and there is no testimony that, like coal-burning locomotives, sparks or hot cinders are emitted. But irrespective of this it had been thirty-four hours since a train had passed.

The weed-killing preparation was referred to by some of the witnesses as oil, but the only testimony touching its potential as a possible agency to which the fire could be attributed is that it was *not* inflammable. No doubt the chemical had killed weeds along the right-of-way and

in their seared condition during the hot summer there was some likelihood that a lighted match or cigarette carelessly tossed aside would ignite the deadened stems.

The difficulty is that more than three hours elapsed between the time MacAlexander's section crew passed and Radford's discovery of the blaze. No one seems to know whether others traversed the area shortly before the fire. There is no positive testimony that appellant's section workers who were on the motor car handled cigarettes in a careless manner, although it was stated that this was sometimes done. No one places the extra maintenance crew in the region at a time appurtenant to the fire. It is only hinted that one of them might have been there.

Act No. 141 of 1907, now Ark. Stat's, § 73-1014, fixes a strict liability upon railroads when loss is occasioned by fire. The defendant is not allowed to plead or prove that the fire causing the damage was not the result of its carelessness or negligence; ''but in all such actions it shall only be necessary for the owner of such property so injured to prove that the fire which caused or resulted in the injury originated or was caused by the operation of such railroad. . . .'' Provision is made for the allowance of an attorney's fee.

In *Kansas City Southern Railway Company* v. *Thomas,* 97 Ark. 287, 133 S. W. 1030, it was held that this Act was intended to make railroad companies liable for fires communicated by its locomotives and other instrumentalities used in the movement of its trains, ''and did not have in contemplation fires caused by the burning of its buildings used in connection with the operation of its trains.''

A more comprehensive view was taken in *Clark* v. *St. L., I. M. & So. Ry. Co.,* 132 Ark. 257, 201 S. W. 111. It was there held that although the legislative language was somewhat involved, yet when construed as a whole it disclosed an intention to make the railway company liable absolutely for injuries to or destruction of property caused by such hazards as the operation of a locomotive,

machinery, train, cars, or other things, when used or operated upon the railroad tracks, or by the positive affirmative acts of the servants or employes of railroad companies in the operation of the railroad. The opinion then said: "The language is sufficiently broad to include such acts as the burning off and clearing up of the right-of-way or roadbed, or such acts as the building of fires on the right-of-way or in proximity thereto while engaged in the work of repairing the railway track or roadbed for the operation of trains."

The Thomas case was distinguished with an explanation that the holding there was that liability of the railway, under controlling facts, was not that of an insurer. Rather, its duty was that of a warehouseman: "But," said Judge Wood, "the [Thomas] opinion is authority for holding that the Act under review does not contemplate an absolute liability upon the part of railroad companies for injuries by fires that are not caused in connection with the operation of their trains, and that are not shown to have been caused by some positive act of the servants or employes."

The statute was applied in *Kansas City Southern Ry. Company* v. *Cecil*, 171 Ark. 34, 283 S. W. 1. Again, in *Missouri Pacific Railroad Co.* v. *Campbell*, 206 Ark. 657, 177 S. W. 2d 174, it was said that in order for a jury to draw the inference that fire originated when sparks fell from a passing locomotive, ". . . it is not essential that the evidence should exclude all possibility of another origin of the fire, . . . but it is sufficient if all the facts and circumstances in evidence fairly warrant the conclusion that the fire did not originate from some other cause." See *Missouri & Arkansas Railway Co.* v. *Treece*, 210 Ark. 63, 194 S. W. 2d 203.

Even though agents of a railroad company do not start the fire, still it is the company's duty to use all reasonable efforts in abatement if one should be discovered on its property in a position to cause danger.

It can hardly be urged—and in fact the argument is not employed—that a diesel locomotive that had passed

appellee's farm thirty-four hours before caused the fire. The only other theoretical origin is the section crew's motor car. Approximately three hours elapsed from the time it passed until Radford saw smoke and undertook to extinguish the blaze. In returning to his home from the morning quest for wood he traversed the same area and saw nothing of a suspicious character. It is possible to conjecture that one of the three men on the motor car (a) *was* smoking; (b) that he threw away a lighted cigarette or cigar; and (c) that fire spread from this source, —but this is pure speculation in the light of testimony that others used the right-of-way for a footpath. Nor can it be said that appellant's agents were negligent in not discovering the fire and then acting with dispatch.

We conclude, therefore, that there was insufficient evidence to support the verdict, so the judgment must be reversed. Cause dismissed.

Mr. Justice McFADDIN and Mr. Justice MILLWEE dissent.